UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   IN CHAMBERS - ORDER

Before the Court is a Motion to Dismiss filed by defendants NetSol Technologies, Inc. ("NetSol"), Najeeb Ghauri, and Naeem Ghauri (collectively "Defendants"). (Docket No. 49.) Counsel for lead plaintiff, Rand-Heart of New York, Inc. ("Plaintiff"), and the putative class has filed an Opposition (Docket No. 50), to which Defendants have submitted a Reply (Docket No. 51). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for March 16, 2015 is vacated, and the matter taken off calendar.

**I.      Background**

NetSol is a NASDAQ-listed software company founded in 1997. Its flagship product is a financial application sold under the brand name NetSol Financial Suite ("NFS"). In recent years, NetSol has been developing a "next generation" version called NFS Ascent ("Ascent"). NFS and Ascent are marketed to corporate customers in the leasing and finance industries, including automotive finance companies and banks. Najeeb Ghauri is NetSol's founder, Chairman since 2003, and CEO since 2006. Naeem Ghauri was CEO of NetSol from 2001 to 2006 and has served as a Director and President of Global Sales since then. The third individual defendant, not a party to the present Motion, is Salim Ghauri, CEO of NetSol Technologies Limited, a NetSol subsidiary based in Pakistan.

Plaintiff alleges, on behalf of a putative class of persons or entities who purchased NetSol securities between March 10, 2011 and November 8, 2013, that Defendants made misleading statements regarding NSF and Ascent. Plaintiff's Consolidated Complaint ("Complaint") highlights the following allegedly false statements:

- That Ascent was "expected to be completed by the end of calendar year 2011." (Amended Form 10-K for fiscal year ended June 30, 2010.)

- That target customers were "still using old systems for maintaining their lease and finance portfolios and are now planning to replace their legacy systems." (Amended Form 10-K for fiscal year ended June 30, 2010; Form 10-K for fiscal year ended June 30,

Case 2:14-cv-05787-PA-SH Document 55 Filed 03/19/15 Page 2 of 9 Page ID #:1928

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

2011; August 13, 2012 press release; Form 10-K for fiscal year ended June 30, 2012.)

- That NetSol "is in a good position to tap new business from these companies." (Amended Form 10-K for fiscal year ended June 30, 2010.)

- That "serious interest in NetSol's next generation solution has been expressed by a few global companies. Demonstrations and workshops with key global clients and partners have been very well received. Hence, the new generation network solution appears to be gaining momentum." (Form 10-Q for quarter ended March 31, 2011; see also Form 10-Q for quarter ended September 30, 2011; Form 10-Q for quarter ended December 31, 2011; Form 10-Q for quarter ended March 31, 2012; Form 10-K for fiscal year ended June 30, 2012; Form 10-Q for quarter ended September 30, 2012; Form 10-Q for quarter ended December 31, 2012; Form 10-Q for quarter ended March 31, 2013.)

- That Ascent was "ready for testing at customer sites. . . ." (Form 10-K for fiscal year ended June 30, 2011; Form 10-K for fiscal year ended June 30, 2012.)

- That "NetSol is experiencing a growing interest in our next generation NFS solution which is poised to go to market by late 2012 to expand our revenue base." (Form 10-K for fiscal year ended June 30, 2011; Form 10-Q for quarter ended September 30, 2011.)

- That "average deal size is increasing, new business leads are growing, and add-on projects are expanding. . . . Today, our new business pipeline and add-on requests from customers are stronger than ever, a fact demonstrated by the signing of more than $20 million in projects in the past two months alone." (September 12, 2013 press release.)

- That "all signs point to continued growth and strength across the business." (2013 Fourth Quarter and Year-End Results Conference Call.)

- That a "global release of NFS Ascent" was taking place and that, "[a]s the rollout of NFS Ascent begins, we are experiencing strong interest from our customers around the globe." (October 24, 2013 press release.)

Plaintiff alleges that these statements were intended to conceal a poor business outlook that was finally revealed in a November 8, 2013 press release that detailed decreased earnings and revenue. Plaintiff further suggests that the press release's remarks that NetSol had been developing Ascent "for nearly four years" and that it had "commenced a soft, regional launch with selected customers" are inconsistent with previous statements, quoted above, regarding the status of and demand for the Ascent software. Plaintiff alleges that NetSol's Form 10-Q for the quarter ended September 30, 2013, also released on November 8, 2013, revealed for the first time that NetSol anticipated that "new licenses for the old product [NSF] will diminish in numbers larger than new product licenses, resulting in a drop in revenues until the new product gains traction in the market." Plaintiff alleges that NetSol's stock price

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

fell 30% in the day following these revelations.

Plaintiff also recounts testimony from "Confidential Witness No. 1" ("CW 1") that allegedly demonstrates that Defendants "have a poor relationship with the truth." (Complaint ¶ 34.) CW 1 apparently met with Asad Ghauri—a NetSol board member and President of NetSol Asia/Pacific and Thailand who is not named as a defendant in this action—in connection with a sales meeting with a prospective NetSol customer. CW 1 allegedly inspected the Ascent software in March 2011 and found it "appalling." (Complaint ¶ 26.) Asad Ghauri allegedly told the customer that NetSol had been working on the software for years when in fact it had only been working on it for weeks. (Complaint ¶ 31.)

Plaintiff filed its original complaint on July 24, 2014. (Docket No. 1.) The Court granted Plaintiff's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel and Liaison Counsel on October 29, 2014. (Docket No. 43.) Plaintiff filed the consolidated complaint on December 19, 2014. (Docket No. 46.) The Complaint alleges claims for (1) violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 against all defendants and (2) violation of Section 20(a) of the Exchange Act against Najeeb Ghauri, Naeem Ghauri, and Salim Ghauri. Defendants move to dismiss the Complaint in its entirety.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion, typically a complaint need only give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (quoting In re Wells Fargo Sec. Litig., 12 F.3d 922, 925 (9th Cir. 1993)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).

In a private action for securities fraud under Section 10(b), the complaint must also satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007). The PSLRA requires a plaintiff to plead the existence of any material false statement or omission with particularity: "[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

**III.    Analysis**

**A.    Section 10(b) and Rule 10(b)-5**

A complaint for violations of Section 10(b) and Rule 10(b)-5 promulgated thereunder must allege six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005). Defendants argue that Plaintiff has not adequately alleged the first two elements.

**1.    Material Misrepresentation or Omission**

"The pleadings must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). The pleadings must also explain why the statements were false and misleading. See In re GlenFed, Inc. Sec. Litit., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds) ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). "Securities fraud cases often involve some more or less catastrophic event occurring between the time the complained-of statement was made and the time a more sobering truth is revealed (precipitating a drop in stock price). . . . In the face of such intervening events, a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." Id. at 1548-49 (emphasis added).

The allegedly false statements highlighted by Plaintiff can be divided into categories relating to (1) the state of NetSol's progress in developing the Ascent software, (2) prospective customers' interest in and "plans" to implement the Ascent software, and (3) the general outlook for NetSol's business. Defendants argue that the challenged statements were not false when made or, if they were, that they were either immaterial or forward-looking statements protected by the PSLRA.

**a.    Plaintiff has failed to allege that most of Defendants' statements concerning the status of Ascent were false when made**

Plaintiff claims that Defendants materially misrepresented the progress made in developing Ascent when they stated that it was "expected to be completed by the end of calendar year 2011" in March 2011, that it was "poised to go to market by late 2012" in September 2011, that it was "ready for testing at customer sites" in September 2011 and September 2012, and that a "global release of NFS Ascent" was taking place in October 2013.

According to Plaintiff, the projections that Ascent would be developed by the end of 2011 and, later, by the end of 2012, were false when made because it "was not ready for sale in March 2011" (Complaint ¶ 36) and because "NFS Ascent was not poised to go to market by late 2012" (Complaint ¶ 40). Neither point suggests that these statements were false when made. The fact that Ascent was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | | Date | March 19, 2015 |
|---|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | | |

ready for sale in March 2011 did not preclude its completion by the end of 2011, and the fact that Ascent did not actually go to market in late 2012 does not preclude its having been "poised" to do so earlier.

With respect to the statement that Ascent was "ready for testing at customer sites," made in September 2011 and September 2012, Plaintiff argues that the software "did not exist" at those times. (Complaint ¶¶ 40, 50.) Plaintiff apparently takes the position that software does not "exist" until it is developed in its final form, or at least in a form that is made available to the general public. Putting aside the questionable merits of this argument, it has nothing to do with what Defendants actually said. Defendants indicated that the software was ready for testing—nothing more. Plaintiff offers no facts to suggest that this statement was false in September 2011 or September 2012. In fact, Plaintiff's reports from CW 1 indicate that at least an early version of the software—"appalling" as it might have been in his subjective judgment—was running as early as March 2011. (Complaint ¶¶ 23-26.)

Finally, Plaintiff argues that the purported "global release of NFS Ascent" taking place in October 2013 was actually a "soft regional launch." (Complaint ¶¶ 63, 64.) Plaintiff notes a shift in language between a press release dated October 24, 2013 touting Ascent's "global release" and a press release dated November 8, 2013 characterizing the release as a "soft regional launch." Defendants make no effort to explain this shift or to suggest a narrow reading of "global release" in their Motion or Reply.

Accordingly, although Plaintiff has alleged a material misrepresentation with respect to the October 2013 "global release" statement, the remainder of Defendants' statements regarding Ascent's progress are non-actionable.

> **b.  Plaintiff has failed to allege that Defendants' statements regarding customer interest in Ascent were false when made**

Plaintiff claims that Defendants misrepresented customer interest in Ascent when they stated that customers were "now planning to replace their legacy systems" in various filings in 2011 and 2012, that "serious interest in NetSol's next generation solution has been expressed by a few global companies" in filings from 2011 to 2013, that "[d]emonstrations and workshops with key global clients and partners have been very well received" in filings from 2011 to 2013, that "the new generation network solution appears to be gaining momentum" in filings from 2011 to 2013, and that "we are experiencing strong interest from our customers around the globe" in October 2013.

Plaintiff claims that Defendants' statements that customers were planning to replace their legacy systems were false when made because "[t]he worldwide recession, which adversely impacted financial institutions, caused these financial institutions to forego or otherwise put expenditures on new computer systems on hold." (Complaint ¶¶ 36, 40, 48.) However, Defendants' statement does not suggest a specific date by which these customers intended to implement their plans: "now planning to replace" cannot be construed as "planning to replace now." Moreover, Plaintiff's allegation that plans were put "on hold" does not imply that plans were abandoned altogether. Plaintiff has therefore failed to allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

that these statements were false.

With respect to Defendants' statements regarding the "momentum" of, "interest" in, and reception of Ascent at demonstrations, Plaintiff again claims that these must be false because Ascent "did not exist" at the time. (See, e.g., Complaint ¶¶ 38, 42, 44, 46, 50, 52, 54, 56.) Plaintiff does not allege that Defendants did not actually hold demonstrations or that no customers had any interest in the product that they were shown. For the reasons discussed above, Plaintiff's idiosyncratic understanding of when software "exists" does not render Defendants' statements false.

### c.  Plaintiff has failed to allege that Defendants' statements regarding their general business outlook were false when made

Plaintiff claims that Defendants falsely stated in September 2013 that "all signs point to continued growth and strength across the business," that their "average deal size is increasing, new business leads are growing, and add-on projects are expanding," and that "add-on requests from customers are stronger than ever, a fact demonstrated by the signing of more than $20 million in projects in the past two months alone." Plaintiff argues that these statements were false when made because (1) "the quarter ended September 30, 2013, had resulted in dismal financial results, and the foreseeable future looked bleak" and (2) financial disclosures in November 2013 and later demonstrate that average deal size was not increasing, new business leads were not growing, add-on projects were not expanding, new business and add-on requests were not stronger than ever, and global game-changing deals were non-existent. (Complaint ¶¶ 58, 60.) Defendants correctly point out, however, that data from September 2013 can differ from data in November 2013 without being false.

Plaintiff also claims that Defendants' claim that "future growth will . . . involve increased revenues from both the current version and the next generation of NFS" is false because "revenue from the sale of the new system would replace revenue from the old system no longer being licensed by the customer." (Complaint ¶¶ 49, 50.) In other words, Defendants "failed to clarify that sales of the new product, once it was eventually created and available for sale and installation, would cannibalize the licensing fees of the older existing product." (Opposition at 2.) Defendants argue that companies are not required to disclose internal competition among their products, but no such argument is necessary. To the extent that Defendants' filings are replete with references to Ascent as the "next generation" of NFS, the potential for such competition was obvious. Moreover, Defendants' statements outline a marketing strategy in which the "first generation" NFS software would continue to be sold "to businesses looking for a mature and globally tested solution"—i.e., businesses that would not be interested in Ascent. (Complaint ¶ 49.) Plaintiff has therefore failed to allege that these statements were false when made.

### d.  Forward-Looking Statements

Defendants argue that many of the challenged statements are forward-looking statements falling within the PSLRA's safe harbor. See 15 U.S.C. § 78u-5(c). Forward-looking statements include those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

"containing a projection of revenues . . . or other financial items," "plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer," and "a statement of future economic performance," among others. 15 U.S.C. § 78u-5(i)(1). The PSLRA precludes liability for a forward-looking statement if (1) it is either immaterial or accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" or (2) the plaintiff fails to adequately plead scienter.

Defendants argue that estimated product completion dates, projected demand for the Ascent software, and statements regarding their general business outlook are all forward-looking statements that were accompanied by meaningful cautionary language. Plaintiff does not contest either argument, but instead argues that these statements "are not the focus of Plaintiff's Complaint." (Opposition at 18.) Plaintiff claims that the Complaint is focused on a handful of "statements of present or historical fact." (Id.) For the reasons discussed above, none of the statements of present or historical fact were false when made.

In summary, the only false statement adequately alleged by Plaintiff is that concerning Ascent's "global release" in October 2013.

### 2. Connecting Naeem Ghauri and Salim Ghauri to the Challenged Statements

Defendants argue that even if Plaintiff has alleged a material misrepresentation, Plaintiff has "ignore[d] the well-established rule that it must specify the basis for claims against each defendant . . . ." (Motion at 15.) Defendants and Plaintiff agree that the only allegations linking Naeem Ghauri and Salim Ghauri to the challenged statements relate to their signing Forms 10-K, but dispute whether or not this is sufficient. Plaintiff has the better argument. "Key corporate officers should not be allowed to make important false financial statements knowingly or recklessly, yet still shield themselves from liability to investors simply by failing to be involved in the preparation of those statements. Otherwise, the securities laws would be significantly weakened, because corporate officers could stay out of the loop such that . . . only the SEC could bring suit against them in an individual capacity for their misrepresentations." Howard v. Everex Systems, Inc., 228 F.3d 1057, 1062 (9th Cir. 2000). Defendants' authority for the proposition that "it [is not] permissible to rely on the fact that [an] officer signed an SEC filing" relates to scienter, not to the more fundamental allegation that a defendant has simply made a statement. In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1159 (C.D. Cal. Oct. 16, 2007).

### 3. Scienter

Defendants argue that Plaintiff has failed to allege "facts that would create a strong inference that [Defendants] made the [statements] at issue with 'actual knowledge . . . that the statement[s were] false or misleading.'" 15 U.S.C. § 78u-5(c)(1); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). "A court must compare the malicious and innocent inferences cognizable from the facts pled in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009). "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.' . . . [T]he plaintiff must plead 'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" Id. (internal citations omitted). Plaintiff argues that it has raised a strong inference of scienter based on (1) the "core operations" inference and (2) allegations sourced to CW 1.

The core operations inference is based on the principle that high-ranking company officials are bound to know about the core operations of their business. See Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 989 (9th Cir. 2008) ("These facts were prominent enough that it would be 'absurd to suggest' that top management was unaware of them."). Plaintiff argues that development and marketing of Ascent, the next generation of NetSol's flagship product, clearly fall within the company's core operations. However, Plaintiff's suggestion that Defendants must have known whether or not the product "existed" over-simplifies the relevant facts. It is not plausible to characterize Ascent's development as a sudden leap from "non-existence" to "existence" when, as made clear in the filings that Plaintiff attacks, this was in fact a multi-step process involving years of testing and refinement, the details of which might well have been obscure to top management. Similarly, it is not "absurd to suggest" that Defendants would have been unaware that Ascent had launched "regionally" rather than "globally." Plaintiff also cannot rely on the weaker version of the core operations inference, which requires merely "important" corporate information plus "detailed and specific allegations about management's exposure to factual information within the company," see Zucco, 552 F.3d at 1000, because the Complaint does not include detailed and specific allegations regarding Defendants' exposure to factual information within the company.

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. . . . Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." Zucco, 552 F.3d at 995. Plaintiff does not explain how CW 1's interactions with Asad Ghauri—not a defendant in this action—are indicative of scienter. Rather than alleging that Asad Ghauri had any role in developing the challenged statements or that he communicated contrary information to Defendants, Plaintiff merely highlights the family relationship between Asad Ghauri and Defendants. This is not sufficient.

In any event, Defendants argue that their trading history – which suggests that they did not gain by making the challenged statements – negates any inference of scienter. See In re Downey Sec. Litig., No. CV 08–3261–JFW (RZx), 2009 WL 736802, at \*14 (C.D. Cal. Mar. 18, 2009) ("A strong inference

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | March 19, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

of scienter is negated when there is an absence of stock sales or where such sales are minimal.") However, "the lack of stock sales by a defendant is not dispositive as to scienter," as company officials may indirectly benefit from manipulating stock prices. No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 944 (9th Cir. 2003). Here, the Court is reluctant to assign significant weight to Defendants' trading history when, for example, other family members involved in the business might have traded on Defendants' behalf. However, for the reasons discussed above, Plaintiff has failed to allege facts creating a strong inference of scienter.

Because Plaintiff has not adequately alleged scienter, Plaintiff's Section 10(b) and Rule 10(b)-5 claim fails.

**B. Section 20(a)**

To state a claim under Section 20(b), a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator. Howard, 228 F.3d at 1065. For the reasons discussed above, Plaintiff has failed to state a claim for a primary violation of the securities law.

**Conclusion**

For all the foregoing reasons, Defendants' Motion to Dismiss is GRANTED and the Complaint is DISMISSED with leave to amend. The First Amended Consolidated Complaint, if any, shall be filed no later than March 31, 2015. If Plaintiff fails to file the First Amended Consolidated Complaint, this action may be dismissed with prejudice.

IT IS SO ORDERED.