Thomas J. McKenna (admitted *Pro Hac Vice*)
tjmckenna@gme-law.com
**GAINEY McKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel:    (212) 983-1300
Fax:    (212) 983-0383

*Lead Counsel for Lead Plaintiff, Plaintiff*
*Mike Clementi, and the Putative Class*

Patrice L. Bishop (182256)
service@ssbla.com
STULL, STULL & BRODY
9430 West Olympic Boulevard
Suite 400
Beverly Hills, CA  90212
Tel:    (310) 209-2468
Fax:    (310) 209-2087

*Liaison Counsel for Lead Plaintiff, Plaintiff*
*Mike Clementi, and the Putative Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RAND-HEART OF NEW YORK, and MIKE CLEMENTI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NETSOL TECHNOLOGIES, INC., NAJEEB GHAURI, and NAEEM GHAURI,<br><br>        Defendants. | Case No. 2:14-cv-5787 (SHx)<br><br>**PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT** |

1    Lead Plaintiff Rand-Heart of New York, Inc. ("Rand-Heart"), together with
2  Mike Clementi, individually and on behalf of all persons similarly situated
3  (collectively "Plaintiffs"), by the undersigned attorneys, for the first amended
4  consolidated complaint against Defendants (defined below) allege the following
5  based upon personal knowledge as to their own acts, and information and belief as to
6  all other matters, based upon, *inter alia*, the investigation conducted by and through
7  their attorneys, which included, among other things, a review of Defendants' public
8  documents, conference calls and announcements, United States Securities and
9  Exchange Commission ("SEC") filings, wire and press releases published by and
10  regarding NetSol Technologies, Inc. ("NetSol" or the "Company"), securities
11  analysts' reports and advisories about the Company, and information readily
12  obtainable from public sources.   Plaintiffs believe that substantial evidentiary
13  support will exist for the allegations set forth herein after a reasonable opportunity
14  for discovery.

## NATURE OF THE ACTION

16    1.    This is a federal class action on behalf of persons or entities (the
17  "Class") who purchased or otherwise acquired the Company's securities between
18  May 10, 2011 and November 8, 2013, inclusive (the "Class Period"), seeking to
19  pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

20    2.    The Company designs, develops, markets, and exports software
21  products primarily to the automobile finance and leasing, banking, healthcare, and
22  financial services industries worldwide.

23    3.    "The Company's primary source of revenue is the licensing,
24  customization, enhancement and maintenance of its suite of financial applications
25  under the brand name NFS (NetSol Financial Suite) and NFS AscentTM for leading
26  businesses in the global lease and finance industry."  *See* NetSol's Form 10-Q for
27  the quarterly period ended September 30, 2014, at p. 21.

28

1

4.     Computer software, or simply software, is any set of machine-readable instructions (executable code) that directs a computer's processor to perform specific operations.  Computer software is to be contrasted with "computer hardware," which is the physical portion of computers.  Computer hardware and software require each other and neither can be realistically used without the other.  Computer software includes computer programs, libraries and their associated documentation.  Software is stored in computer memory and is intangible, *i.e.*, it cannot be touched. At the lowest level, executable code consists of machine language instructions specific to an individual processor – typically a central processing unit ("CPU").  A machine language consists of groups of binary values signifying processor instructions that change the state of the computer from its preceding state.

5.     Computer software has to be "loaded" into the computer's storage (such as the hard drive or memory).  Once the software has loaded, the computer is able to execute the software.   This involves passing instructions from the application software, through the system software, to the hardware which ultimately receives the instruction as machine code.  Each instruction causes the computer to carry out an operation – moving data, carrying out a computation, or altering the control flow of instructions.

6.     Software (machine language instructions) either exists and can be loaded into hardware so it can be executed or it does not exist.  Software is like a light switch: it is either on or it is off.  Software language either exists and can be executed or it does not exist and cannot be executed.  There is no intermediate stage of existence for software.

7.     The software that NetSol sells is a major piece of infrastructure at its customer's business and takes, once fully developed and ready for sale, approximately eighteen (18) months to install at the customer's business.   The installation of the software is a tremendous disruption in the customer's business as all workers and computer systems need to be switched over to the new system and

all existing data needs to be successfully migrated from the old system to the new system.

8.    As discussed herein, throughout the Cass Period, Defendants made false and misleading statements to the market regarding the Company's NFS Ascent software product ("Ascent", sometimes referred to as NetSol's "next generation" software product or "NextGen").

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule l0(b)-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

**Plaintiffs**

14.    ***Lead Plaintiff Rand-Heart***, as set forth in the certification attached to Rand-Heart's lead plaintiff motion (Dkt. No. 26-2), purchased NetSol securities at artificially inflated prices during the Class Period and has been damaged as a result

3

of the revelations by Defendants of their prior false statements and material omissions.

15. ***Plaintiff Mike Clementi***, as set forth in the certification attached hereto, purchased NetSol securities at artificially inflated prices during the Class Period and has been damaged as a result of the revelations by Defendants of their prior false statements and material omissions.

**Defendants**

16. ***Defendant NetSol*** claims to design, develop, market, and export software products primarily to the automobile finance and leasing, banking, healthcare, and financial services industries worldwide. It also states it provides system integration, consulting, and IT products and services. The Company was founded in 1997 and is headquartered in Calabasas, California. NetSol is traded on the NASDAQ as NTWK.

17. ***Defendant Najeeb Ghauri*** is, and at all relevant times was, the Chief Executive Officer ("CEO") and Chairman of the Company. Najeeb Ghauri has been a Director of the Company since 1997, Chairman since 2003 and CEO from 1999 to 2001 and then again since October 2006. Najeeb Ghauri is the founder of NetSol. He was responsible for the NetSol listing on NASDAQ in 1999, the NetSol subsidiary listing on KSE (Karachi Stock Exchange) in 2005, and the NetSol listing on the NASDAQ Dubai exchange in 2008. Najeeb Ghauri also served as the Company's Chief Financial Officer ("CFO") from 2001 to 2005. As CEO during the Class Period, Najeeb Ghauri was "responsible for managing the day-to-day operations of the Company, as well as the Company's overall growth and expansion plan." *See* NetSol's Form DEF 14A, dated May 29, 2013 ("2013 Proxy"), at p. 22.

18. ***Defendant Naeem Ghauri*** is, and at all relevant times was, a Director of the Company and NetSol's President of Global Sales. He is "the director of global sales." *See* 2013 Proxy at p. 23. Previously, Naeem Ghauri was the Company's CEO from August 2001 to October 2006. He also serves as the

Managing Director of NetSol (UK) Ltd., a wholly owned subsidiary of the Company.

**Non-Defendant**

19.   **Salim Ghauri** is, and at all relevant times was, the CEO of NetSol Technologies Limited, a subsidiary of the Company located in Lahore, Pakistan. Salim Ghauri was also a Director of the Company at certain times during the Class Period.   According to the Company's 2013 Proxy, Salim Ghauri "is the founder of NetSol Technologies (previously Network Solutions) and the visionary force behind the Company."   The 2013 Proxy further labelled NetSol Technologies Limited as "the Company's center of technological excellence[.]"   He is responsible for overseeing "the company's business in the Asia Pacific Region."   *See* 213 Proxy at p. 23.

20.   Defendants named above in ¶¶ 17-18 are referred to herein as the "Individual Defendants."

21.   "Najeeb Ghauri, Naeem Ghauri and Salim Ghauri are brothers."   *See* 2013 Proxy at p. 16.   At all relevant times, these three brothers effectively controlled NetSol by virtue of their combined ownership of NetSol's common stock: beneficial ownership of 20.61% as of April 1, 2011 (Form DEF 14A dated April 11, 2011 at p. 24); beneficial ownership of 17.84% as of May 30, 2012 (Form DEF 14A dated June 1, 2012 at p. 31); beneficial ownership of 12.53% as of May 10, 2013 (2013 Proxy at p. 21).   In addition, by virtue of their positions of authority in the Company, Najeeb Ghauri, Naeem Ghauri and Salim Ghauri exercised hands-on control over all aspects of NetSol's day to day operations.   An October 13, 2013 *Los Angeles Times* article, "How I Made It: Najeeb Ghauri, founder and CEO of NetSol Technologies", described the Ghauri "Family Affair" as follows: "[Najeeb] Ghauri, 58, runs the company with his younger brothers and co-founders, Salim, who lives in Pakistan, and Naeem, who is based in Thailand. 'If I didn't do this with my brothers I wouldn't be here today,' he said. 'I could trust my brothers. We have confidence and

trust in each other because we have the same goal: to build a great company.' There are other benefits. "We complement each other. I was good at the finance side, raising money from investors. They bring technology experience.'"

22.     The contractual rights of Najeeb Ghauri, Naeem Ghauri, and Salim Ghauri are memorialized in the text of employment agreements, copies of which were filed as exhibits to NetSol's Form 10-KSB for the fiscal year ended June 30, 2007, as subsequently amended by revisions filed as an exhibits to NetSol's Form 10-KSB for the fiscal year ended June 30, 2008 and NetSol's Form 10-Q for the fiscal year ended December 31, 2009.

23.     The paragraphs above serve to evidence that the Individual Defendants acted as controlling persons of NetSol within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the misleading financial information filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants:

(a)     had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.

(b)     had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

24.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the wrongful conduct, Plaintiffs and other members of the Class

suffered damages in connection with their purchases of the Company's securities during the Class Period.

25. Based upon the fact that the Individual Defendants acted in concert to control NetSol at both the corporate and operational level, they had timely and intimate knowledge of all significant aspects of NetSol's plans, progress, and setbacks; and they were responsible for disseminating business information to the investment community. Accordingly, the Individual Defendants:

(a) were aware of the Company's dissemination of business information to the investing public which they knew or recklessly disregarded was materially false and misleading.

(b) had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain, verify and to disclose such facts, even though such facts were available to them.

### MATERIALLY FALSE AND MISLEADING STATEMENTS

26. On March 10, 2011, NetSol filed its Amended Form 10-K for its fiscal year ended June 30, 2010 with the SEC. This document, which was signed by Najeeb Ghauri, Naeem Ghauri, and Salim Ghauri, stated in relevant part:

> The Company is well-positioned for continued revenue growth and has invested heavily in the development of its next generation product, which is expected to be completed by the end of calendar year 2011. Globally, our target customers are still using old systems for maintaining their lease and finance portfolios and are now planning to replace their legacy systems.

27. On May 10, 2011, NetSol filed a Form 8-K with the SEC. This document, which was signed by Najeeb Ghauri, contained an appended copy of a May 10, 2011 NetSol press release which stated under the caption "Recent Business Highlights" that NetSol had recently "secured multiple client wins for NFS NextGen, the latest version of its NetSol Financial Suite (NFS)(TM) solution" and

that "NetSol is currently in sales discussions for several new NFS NextGen implementation projects."

28.    The May 10, 2011 NetSol press release was materially false and misleading because NetSol had not successfully developed and sold its next generation NFS product ("NFS NextGen, the latest version of its NetSol Financial Suite (NFS)(TM) solution") to multiple clients. As subsequently indicated in NetSol's Form 10-Q for the quarterly period ended December 31, 2011 (as filed with the SEC on February 2, 2012), there was only one installation of NetSol's next generation NFS product (not "multiple client wins"), and there is nothing that describes the single installation as a sale as opposed to a beta testing:

> NextGen - NFS went live with Thailand's Kiatnakin, a leading Bank, a leading provider of financial services to commercial and corporate sectors in Thailand. *See* Form 10-Q, dated December 31, 2011 at p. 27.

*    *    *

> First successful implementation of NextGen - NFS solution with a Thai Bank is a very positive indicator for new deals. *Id.* at p. 30.

*    *    *

> Our NFS suite of products is currently undergoing a major initiative towards developing the next generation of solutions. The Company believes that this would change the landscape for NetSol and increase both demand and the market. We are in the middle of developing a comprehensive sales and marketing plan requiring new personnel, markets and investment.  In addition to GMAC in China ready to go live in next few months, the first system went live in Thailand with a leading bank. *Id.* at p. 28.

29.    Based upon the language in the March 10, 2011 document referenced above, the investment community was led to believe that the May 10, 2011 press release was announcing the successful development and initial sales of the next generation NFS product.

30.    On September 5, 2012, NetSol filed its Form 10-K for the fiscal year ended June 30, 2012 with the SEC.  This document, which was signed by Najeeb Ghauri and Naeem Ghauri represented that "NetSol continues to enjoy demand for

8

the current NFS solution, <u>as well as the next generation</u>."  *See* NetSol's Form 10-K, dated June 30, 2012 at p. 6.

31.    This statement was materially false and misleading because, at the time it was made, <u>there was no demand for "the next generation"</u> [Ascent] product.  The absence of demand is evidenced by the fact that:

(a)    upon release of Ascent (approximately one year after this statement was made), NetSol announced the expectation of no revenue from Ascent "<u>for at least two to three quarters.</u>"  *See* NetSol's Form 10-Q, dated September 30, 2013 at p. 31 ("Management is expecting sales of the legacy product to remain under pressure for at least two to three quarters until the time that we begin recognizing revenues for NFS Ascent.");

(b)    If demand for Ascent had existed as of September 5, 2012, there would have been a backlogged pipeline of waiting orders and an announcement and recordation of revenue from an influx of sales upon the release of Ascent in November 2013, not no announcement of sales of Ascent and a statement that NetSol expected no revenue from Ascent "<u>for at least two to three quarters.</u>"  *See* NetSol's Form 10-Q, dated September 30, 2013 at p. 31.

32.    On September 12, 2013, NetSol filed its Form 10-K for the fiscal year ending June 30, 2013.  This document, which was signed by Najeeb Ghauri and Naeem Ghauri represented that "In China, NetSol is the de facto leader in the leasing and finance enterprise solution domain. With this position, NetSol continues to enjoy demand for the current NFS™ solution, as well as the next generation.  NetSol will continue strengthening its position within existing multinational auto manufacturers, as well as, local Chinese captive finance and leasing companies."  *See* NetSol's Form 10-K, dated June 30, 2013 at p. 6.

33.    This statement regarding the "demand" for the next generation product caused the price of NetSol's stock to jump by 9%, from $10.20 on September 11, 2013 to $11.17 on September 12, 2013.

34.    This statement was materially false and misleading because, at the time it was made, there was no demand for "the next generation" Ascent product. The absence of demand is evidenced by the fact that:

(a)    upon release of Ascent (approximately one year after this statement was made), NetSol announced the expectation of no revenue from Ascent "for at least two to three quarters." *See* NetSol's Form 10-Q, dated September 30, 2013 at p. 31 ("Management is expecting sales of the legacy product to remain under pressure for at least two to three quarters until the time that we begin recognizing revenues for NFS Ascent.");

(b)    If demand for Ascent had existed as of September 12, 2013, there would have been a backlogged pipeline of waiting orders and an announcement and recordation of revenue from an influx of sales upon the release of Ascent in November 2013, not no announcement of sales of Ascent and a statement that NetSol expected no revenue from Ascent "for at least two to three quarters." *See* NetSol's Form 10-Q, dated September 30, 2013 at p. 31.

35.    On October 24, 2013, Defendants issued a Company press release announcing the "rollout of NFS Ascent" and "the introduction and global release of NFS Ascent, the company's next generation platform, offering the most technologically advanced solution for the auto and equipment finance and leasing industry." (Emphasis added).  This announcement caused the price of NetSol's stock to increase by almost 5%, from a closing price of $7.24 on October 23, 2013 to a closing price of $7.59 on October 24, 2013.

36.    The October 24, 2013 statement was materially false and misleading because, at the time it was made, there was no "global release of NFS Ascent."

10

1   Instead, as later admitted by Defendants in NetSol's Form 10-Q for the quarterly

2   period ended September 30, 2013 as filed with the SEC on November 8, 2013, there

3   was only a "soft, regional launch with selected customers in APAC [Asian Pacific

4   American Coalition] to test the readiness for the global markets."

5       37.   On October 25, 2013, NetSol sent a notice to the Karachi Stock

6   Exchange announcing "the introduction and release of NFS Ascent, the company's

7   next generation platform, offering the most technologically advanced solution for

8   the auto and equipment finance and leasing industry."

9       38.   This statement was materially false and misleading because, at the time

10  it was made, there was no release of Ascent for the auto and equipment finance and

11  leasing industry.  Instead, as later admitted by Defendants in NetSol's Form 10-Q

12  for the quarterly period ended September 30, 2013 as filed with the SEC on

13  November 8, 2013, there was only a "soft, regional launch with selected customers

14  to test the readiness for the global markets."

15      39.   On November 8, 2013, Defendants filed the Company's Form 10-Q for

16  the quarterly period ended September 30, 2013, with the SEC.  As noted above, this

17  document, which was signed by Najeeb Ghauri, stated that "Management [which

18  included the Individual Defendants] is expecting sales of the legacy product to

19  remain under pressure for at least two to three quarters until the time that we begin

20  recognizing revenues for NFS."  In addition, this document stated:

> A focus of the marketing plan centers around the Global Launch of
> NFS Ascent, the next generation of NFS that the company has been
> developing for nearly four years. Announced on October 24, 2013,
> NetSol has commenced a soft, regional launch with selected customers
> in APAC to test the readiness for the global markets. A formal launch
> of the global marketing plan is expected for all of our key markets of
> North America, Europe and APAC.

26      40.   Defendants' admission of a non-expectation of revenue from Ascent for

27  at least two or three quarters and their admission that NetSol had commenced a soft

28

regional launch with selected customers in APAC to test the readiness for the global markets made it clear that they had no basis for prior statements regarding "demand" for Ascent and a "global release" of Ascent.

41.     Upon dissemination of the November 8, 2013 disclosures, Defendants' lack of veracity became apparent to the investment community.  Stockholders sold NetSol's stock in inordinate volumes throughout the day, causing NetSol's stock price to drop 30% from a closing price of $7.48 on November 7, 2013, to a closing price $5.23 on November 8, 2013.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

42.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased or otherwise acquired NetSol's securities between May 10, 2011 and November 8, 2013, inclusive, seeking to pursue remedies under the Exchange Act.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.

44.     Record owners and other members of the Class may be identified from records maintained by NetSol or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts regarding the Company's prospects; and

(c)     whether the members of the Class have sustained damages and, if so, the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **LOSS CAUSATION**

49.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

50.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and were deliberately reckless such that the market was deceived and by this course of conduct, the price of NetSol securities was artificially inflated and this deliberately reckless course of conduct operated as a fraud or deceit on Class Period purchasers of NetSol securities by misrepresenting the Company's prospects. Later, when Defendants' prior misrepresentations and material omissions became apparent to the market, the price of NetSol securities fell, as the prior artificial inflation came out of the price.  As a result of their purchases of

NetSol securities during the Class Period, Plaintiffs and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws

51.     At all relevant times, the market for NetSol's securities was an efficient market for the following reasons, among others:

(a)     NetSol met the requirements for listing on the NASDAQ, a highly efficient and automated market;

(b)     During the Class Period, on average, millions of shares were traded weekly, demonstrating a very active and broad market for NetSol securities and permitting a strong presumption of an efficient market;

(c)     As a regulated issuer, NetSol filed periodic public reports with the SEC;

(d)     NetSol regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(e)     Unexpected material news about NetSol was rapidly reflected and incorporated into the Company's securities price during the Class Period.

52.     As a result of the foregoing, the market for NetSol's securities promptly digested current information regarding NetSol from all publicly available sources and reflected such information in the price of NetSol's securities.  Under these circumstances, all purchasers of NetSol's securities during the Class Period suffered similar injury through their purchase of NetSol's securities at artificially inflated prices, and a presumption of reliance applies.

## SCIENTER

**Najeeb Ghauri**

53.     Najeeb Ghauri, who signed the May 10, 2011 Form 8-K, was "responsible for managing the day-to-day operations of the Company, as well as the Company's overall growth and expansion plan."  *See* NetSol's Form DEF 14A, dated May 29, 2013 at p. 22.  Accordingly, at the time he affixed his signature, he knew or was reckless in not knowing that NetSol had not "secured multiple client wins for NFS NextGen."  *See supra* ¶ 27.

54.     Najeeb Ghauri, who signed the June 30, 2012 and June 30, 2013 Forms 10-K was "responsible for managing the day-to-day operations of the Company, as well as the Company's overall growth and expansion plan."  *See* NetSol's Form DEF 14A, dated May 29, 2013 at p. 22.  Accordingly, at the time he affixed his signature, he knew or was reckless in not knowing that NetSol did not continue "to enjoy demand" for the "next generation" NFS solution.  *See supra* ¶¶ 30, 32.

55.     Najeeb Ghauri, who is quoted in the October 24, 2013 press release as discussing the "rollout of NFS Ascent" knew that there was no "rollout" as of that date.  As the individual responsible for the day-to-day operations of the Company, he knew or was reckless in not knowing that there was only an introduction of Ascent to selected customers in APEC "to test the readiness for global markets."  *See supra* ¶¶ 35-36, 38-40.

**Naeem Ghauri**

56.     Naeem Ghauri, who signed the June 30, 2012 and June 30, 2013 Form 10-Ks was "the director of global sales."  *See* NetSol's Form DEF 14A, dated May 29, 2013 at p. 23.  Accordingly, at the time he affixed his signature, he knew or was reckless in not knowing that NetSol did not continue "to enjoy demand" for the "next generation" NFS solution.  *See supra* ¶¶ 30, 32.

**FIRST CLAIM**

**Violation of Section 10(b) of the Exchange Act and Rule 10b-(5)**

**Promulgated Thereunder Against all Defendants**

57.     Plaintiffs repeat and re-alleges each and every allegation contained above as if fully set forth herein.

58.     This claim is brought against NetSol and all of the Individual Defendants.

59.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (b) caused Plaintiffs and other members of the Class to purchase NetSol's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and/or reckless course of conduct, Defendants, and each of them, took the actions set forth herein.

60.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for NetSol's securities in violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

61.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and/or a reckless course of conduct as alleged herein in an effort to assure investors of NetSol's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of

16

material facts and omitting to state material facts necessary in order to make the statements made about NetSol and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and/or a reckless course of business that operated as a fraud and deceit upon the purchasers of NetSol's securities during the Class Period.

62.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts:  (a) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's financial and business prospects; (c) the Individual Defendants had access to other members of the Company's management team, internal reports and other data and information about the Company's finances and operations at all relevant times; and (d) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain, verify and to disclose such facts, even though such facts were available to them.

64.     As a result of the dissemination of the materially false and misleading information and failure to verify and disclose material facts, as set forth above, the market price of NetSol's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of NetSol's securities were artificially inflated, and relying directly or indirectly on the misleading statements and

Company press releases issued by Defendants, or upon the integrity of the market in which the Company's securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired NetSol securities during the Class Period at artificially high prices and were or will be damaged thereby.

65.     At the time of said omissions and/or materially false and misleading statements, Plaintiffs and other members of the Class were ignorant of their misleading nature, and believed them to be true.

66.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of

### The Exchange Act Against the Individual Defendants

68.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

69.     The Individual Defendants acted as controlling persons of NetSol within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the misleading financial information filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

1   dissemination of the various statements that Plaintiffs contend are false and

2   misleading.

3       70.    The Individual Defendants had direct and supervisory involvement in

4   the day-to-day operations of the Company and, therefore, are presumed to have had

5   the power to control or influence the particular material misrepresentations giving

6   rise to the securities violations as alleged herein, and exercised the same.

7       71.    As set forth above, the Individual Defendants violated Section 10(b)

8   and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

9       72.    By virtue of their positions as controlling persons, the Individual

10  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and

11  proximate result of the Individual Defendants' wrongful conduct, Plaintiffs and

12  other members of the Class suffered damages in connection with their purchases of

13  the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

15  **WHEREFORE,** Plaintiffs pray for relief and judgment, as follows:

16      (a)    Determining that this action is a proper class action, designating

17  Plaintiffs as Class representative under Rule 23 of the Federal Rules of Civil

18  Procedure and Plaintiffs' counsel as Class Counsel

19      (b)    Awarding compensatory damages in favor of Plaintiffs and the

20  other Class members against all Defendants, jointly and severally, for all

21  damages sustained as a result of Defendants' wrongdoing, in an amount to be

22  proven at trial, including interest thereon;

23      (c)    Awarding Plaintiffs and the Class their reasonable costs and

24  expenses incurred in this action, including counsel fees and expert fees; and

25      (d)    Awarding such other and further relief as the Court may deem

26  just and proper.

27  ///

28

1

## JURY TRIAL DEMANDED

2

Plaintiffs hereby demand a trial by jury.

3

4

Dated: March 31, 2015

5

**GAINEY McKENNA & EGLESTON**

6

By: */s/ Thomas J. McKenna*

7

Thomas J. McKenna (admitted *Pro Hac Vice*)

8

tjmckenna@gme-law.com

440 Park Avenue South, 5th Floor

9

New York, NY 10016

10

Tel:   (212) 983-1300

Fax:   (212) 983-0383

11

12

*Lead Counsel for Lead Plaintiff, Plaintiff Mike Clementi, and the Putative Class*

13

14

Patrice L. Bishop (182256)

**STULL, STULL & BRODY**

15

9430 West Olympic Boulevard

Suite 400

16

Beverly Hills, CA  90212

17

Tel:   (310) 209-2468

Fax:   (310) 209-2087

18

service@ssbla.com

19

20

*Liaison Counsel for Lead Plaintiff, Plaintiff Mike Clementi, and the Putative Class*

21

22

23

24

25

26

27

28

## CERTIFICATION OF NAMED PLAINTIFF

I, _Michael C. Clementi_ ("Plaintiff") hereby retain the firm and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff reviewed a copy of the complaint and is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in *NetSol Technologies, Inc.* security that is the subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 200 | NTWK | Buy | 11/4/2013 | $7.73 |
| | | | | |
| | | | | |
| | | | | |

Please list other transactions on a separate sheet of paper, if necessary.

Plaintiff has sought to serve as a class representative in the following cases within the last three years:


Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _30_ day of _July_, 2014

_____
Signature

_Michael C. Clementi_
Print Name (& Title if applicable)