UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** IN CHAMBERS - ORDER

Before the Court is a Motion to Dismiss First Amended Consolidated Complaint ("FACC") filed by defendants NetSol Technologies, Inc. ("NetSol"), Najeeb Ghauri, and Naeem Ghauri (collectively "Defendants"). (Docket No. 59.) Counsel for the lead plaintiff and the putative class have filed an Opposition (Docket No. 60), to which Defendants have submitted a Reply (Docket No. 62). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for June 8, 2015 is vacated, and the matter taken off calendar.

### I. Background & Procedural History

NetSol is a NASDAQ-listed software company founded in 1997. Its flagship product is a financial application sold under the brand name NetSol Financial Suite ("NFS"). In recent years, NetSol has been developing a "next generation" version called NFS Ascent ("Ascent"). NFS and Ascent are marketed to corporate customers in the leasing and finance industries, including automotive finance companies and banks. Najeeb Ghauri is NetSol's founder, Chairman since 2003, and CEO since 2006. Naeem Ghauri was CEO from 2001 to 2006 and has served as a Director and President of Global Sales since then.

Plaintiff alleges, on behalf of a putative class of persons or entities who purchased NetSol securities between May 10, 2011 and November 8, 2013, that Defendants made misleading statements regarding NSF and Ascent. Plaintiff's FACC highlights the following allegedly false statements:

- That NetSol had "secured multiple client wins for NFS NextGen, the latest version of its Netsol Financial Suite (NFS) solution" and that "NetSol is currently in sales discussions for several new NFS NextGen implementation projects." (Form 8-K filed May 10, 2011.)

- That "NetSol continues to enjoy demand for the current NFS solution, as well as the next generation." (Form 10-K filed September 5, 2012.)

- That, "[i]n China, NetSol is the de facto leader in the leasing and finance enterprise solution domain. With this position, NetSol continues to enjoy demand for the current

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

> NFS solution, as well as the next generation. NetSol will continue strengthening its position within existing multinational auto manufacturers, as well as local Chinese captive finance and leasing companies." (Form 10-K filed September 12, 2013.)

- That, as of October 24, 2013, NetSol was commencing a "rollout of NFS Ascent" in the form of a "global release" of the product. (Press Release dated October 24, 2013.)

- That, as of October 25, 2013, Netsol was "introduc[ing] and releas[ing]" Ascent. (October 25, 2013 notice to Karachi Stock Exchange.)

Plaintiff alleges that these statements were intended to conceal a poor business outlook that was finally revealed in a November 8, 2013 press release noting NetSol's expectation that it would not recognize revenue from Ascent for at least two or three quarters. The press release also allegedly noted that

> [a] focus of the marketing plan centers around the Global Launch of NFS Ascent, the next generation of NFS that the company has been developing for nearly four years. Announced on October 24, 2013, NetSol has commenced a soft, regional launch with selected customers in APAC to test the readiness for the global markets. A formal launch of the global marketing plan is expected for all of our key markets of North America, Europe and APAC.

Plaintiff alleges that these disclosures caused NetSol's stock price to drop 30% from a closing price of $7.48 on November 7, 2013 to a closing price of $5.23 on November 8, 2013.

Plaintiff filed its original complaint on July 24, 2014. (Docket No. 1.) The Court granted Plaintiff's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Counsel and Liaison Counsel on October 29, 2014. (Docket No. 43.) Plaintiff filed its Consolidated Complaint on December 19, 2014. (Docket No. 46.) The Court dismissed the Consolidated Complaint on March 19, 2015. (Docket No. 55.) Plaintiff filed its FACC on March 31, 2015, alleging claims for (1) violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 against all defendants and (2) violation of Section 20(a) of the Exchange Act against Najeeb Ghauri and Naeem Ghauri. Defendants move to dismiss the Complaint in its entirety.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." In order to survive a Rule 12(b)(6) motion, typically a complaint need only give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (quoting In re Wells Fargo Sec. Litig., 12 F.3d 922, 925 (9th Cir. 1993)). "[A] plaintiff's obligation to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).

In a private action for securities fraud under Section 10(b), the complaint must also satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007). The PSLRA requires a plaintiff to plead the existence of any material false statement or omission with particularity: "[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

**III.    Analysis**

   **A.    Section 10(b) and Rule 10(b)-5**

A complaint for violations of Section 10(b) and Rule 10(b)-5 promulgated thereunder must allege six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005). Defendants argue that Plaintiff has not adequately alleged the first two elements.

      **1.    Material Misrepresentation or Omission**

"The pleadings must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). The pleadings must also explain why the statements were false and misleading. See In re GlenFed, Inc. Sec. Litit., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds) ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). "Securities fraud cases often involve some more or less catastrophic event occurring between the time the complained-of statement was made and the time a more sobering truth is revealed (precipitating a drop in stock price). . . . In the face of such intervening events, a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." Id. at 1548-49 (emphasis added).

The allegedly false statements highlighted by Plaintiff can be divided into categories relating to (1) NetSol's securing "multiple client wins" for Ascent and discussing "several new [Ascent] implementation projects" as of May 10, 2011; (2) "demand" for Ascent as of September 5, 2012 and September 12, 2013; and (3) the "release" of Ascent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

      **a.    Plaintiff has failed to adequately allege that Defendants' statements regarding "multiple client wins" and "several new implementation projects" were false when made**

      Plaintiff claims that Defendants materially misrepresented sales of the Ascent software when they stated that NetSol had "secured multiple client wins for NFS NextGen" and that "NetSol is currently in sales discussions for several new NFS NextGen implementation projects." Plaintiff argues that these statements were false when made because "NetSol had not successfully developed and sold its next generation NFS product . . . to multiple clients." (FACC at 7-8.) Plaintiff also notes that a subsequent quarterly report indicated that "there was only one installation of NetSol's next generation NFS product (not 'multiple client wins'), and there is nothing that describes the single installation as a sale as opposed to beta testing." (Id. at 8.)

      Defendant counters that quarterly report highlighted by Plaintiff does not indicate that there was only one "client win" during the relevant period. First, Defendants point out that, even in the language excerpted in the FACC, there is discussion of two "client wins": Ascent had been installed at a Thai bank and "GMAC in China [was] ready to go live in [sic] next few months." Second, Defendants note that there is no allegation that the quarterly report includes an exhaustive list of "client wins." The decision to highlight these "wins" does not demonstrate that there were no others.

      In its Opposition, Plaintiff argues that neither the dealings with the Thai bank or GMAC China represent "wins" because the dictionary definition and Defendants' prior use of the term dictate that a "win" is "a signed agreement or contract." (Opp. at 8.) This argument borders on frivolous. While a signed contract may certainly constitute a "win," there is no authority for the suggestion that a salesperson cannot regard getting his or her foot in the door as a win.

      **b.    Plaintiff has failed to adequately allege that Defendants' statements regarding "demand" for the Ascent software were false when made**

      On September 5, 2012 and September 12, 2013, Defendants represented that "NetSol continues to enjoy demand for the current NFS solution, as well as the next generation." Plaintiff claims that this statement is materially misleading because there was in fact no demand for the Ascent software, as demonstrated by Defendants' concession later in 2013 that they did not expect any revenues from Ascent "for at least two to three quarters." (FACC at 10.) Plaintiff argues that if there had been demand for the Ascent software on September 5, 2012 and September 12, 2013, there would have been "a backlogged pipeline of waiting orders" and immediate revenues upon release of the software.

      Defendant points out that the alleged failure of sales to materialize immediately upon Ascent's release does not prove that there was no demand when the statements at issue were made. Plaintiff's argument assumes, without basis, that demand for a product will be necessarily manifest in pre-orders. Although Plaintiff correctly argues that statements regarding demand for a product may be actionable, In re Computer Assocs. Sec. Litig., 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999), and need not be considered

Case 2:14-cv-05787-PA-SH   Document 63   Filed 06/22/15   Page 5 of 8   Page ID #:2419

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

forward-looking, Westley v. Oclaro, Inc., 897 F. Supp. 2d 902 (N.D. Cal. 2012), it has not identified any basis for its allegation that Defendants' statements were false when made.

### c. Plaintiff has adequately alleged material misrepresentations concerning the scope of Ascent's October 2013 release

Plaintiff challenges two of Defendants' statements regarding the scope of Ascent's release in October 2013. First, Plaintiff highlights an October 24, 2013 press release stating that NetSol had commenced a "global release" of the Ascent software. Second, Plaintiff cites an October 25, 2013 notice to the Karachi Stock Exchange announcing "the introduction and release of NFS Ascent, the company's next generation platform, offering the most technologically advanced solution for the auto and equipment finance and leasing industry." (FACC at 10-12.) Plaintiff alleges that these statements were false when made because (1) the 10-Q filed on November 8, 2013 indicated that NetSol had only undertaken a "soft, regional launch with selected customers in APAC to test the readiness for the global markets" and (2) because NetSol expected no revenues from Ascent for at least two or three quarters.

In its order granting Defendants' earlier Motion to Dismiss, the Court noted that the "global release" statement could not be reconciled with the later "regional launch" statement. Defendants urge the Court to reconsider, suggesting that while the "global release" statement announced that Ascent was available to customers worldwide, the "regional launch" statement referred more narrowly to NetSol's Ascent "marketing plan." Defendants argue that this interpretation emerges when the 10-Q's "regional launch" statement is placed in context. After reiterating the "global release" claim, the 10-Q noted the following under the heading, "Marketing and Business Development Activities":

> A focus of the marketing plan centers on the Global Launch of NFS Ascent . . . . NetSol has commenced a soft, regional launch with selected customers in APAC to test the readiness for the global markets. A formal launch of the global marketing plan is expected for all of our key markets of North America, Europe, and APAC.

This presentation (with ellipsis added by Defendants) indeed suggests a distinction between the software release and the launch of the marketing plan. As Plaintiff points out, though, the ellipsis hides a clause noting that the "regional launch" was "announced on October 24, 2013." If the "regional launch" discussed in the 10-Q referred only to the marketing plan, one would expect the October 24, 2013 press release to announce the marketing plan. However, the press release makes no mention of the marketing plan. Instead, it only discusses Ascent's release. Defendants do not appear to have observed the distinction between releasing the software and launching the marketing plan for which they now argue.

Similarly, though Defendants argue that the October 25, 2013 announcement of Ascent's release to "the auto and equipment finance and leasing industry" was true in light of its dealings with GMAC China, Plaintiff contends that Defendants' failure to qualify the geographic scope of this release was materially misleading. Plaintiff's broad reading of "industry"—with no geographic restrictions—is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

particularly plausible in light of the "global release" language included in the press release issued one day earlier.

Accordingly, while Plaintiff has alleged material misrepresentations made on October 24, 2013 and October 25, 2013 regarding the scope of Ascent's release, the other statements identified in the FACC are non-actionable.

### 2. Scienter

In the order dismissing the Consolidated Complaint, the Court held that Plaintiff did not adequately plead scienter. Defendants argue that the FACC does not remedy the shortcomings identified in the Court's previous order. Defendants argue that Plaintiff has failed to allege "facts that would create a strong inference that [Defendants] made the [statements] at issue with 'actual knowledge . . . that the statement[s were] false or misleading.'" 15 U.S.C. § 78u-5(c)(1); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009). "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness.' . . . [T]he plaintiff must plead 'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" Id. (internal citations omitted).

For the reasons discussed above, the Court need only address Plaintiff's allegations concerning October 2013 statements about the scope of Ascent's release. The FACC does not include any allegations regarding Naeem Ghauri's knowledge that these statements were misleading. (FACC ¶ 56.) The FACC does, however, note that Najeeb Ghauri was quoted in the October 24, 2013 press release announcing Ascent's "global release."

Plaintiff argues that it has raised a strong inference of scienter based on the "core operations" inference. The core operations inference is based on the principle that high-ranking company officials are bound to know about the core operations of their business. See Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 989 (9th Cir. 2008) ("These facts were prominent enough that it would be 'absurd to suggest' that top management was unaware of them."). In its previous order, the Court held that "it is not 'absurd to suggest' that Defendants would have been unaware that Ascent had launched 'regionally' rather than 'globally.'" Given Najeeb Ghauri's apparent involvement in the October 24, 2013 press release, his position as CEO in a company that had only four executives, and the significance of Ascent to NetSol's business, the Court now holds that Plaintiff has adequately alleged Najeeb Ghauri's scienter. See Patel v. Axesstel, Inc., No. 3:14–CV–1037–CAB–BGS, 2015 WL 631525, at *9-*11 (S.D. Cal. 2015) (noting that while "senior executives cannot be expected to know the details of every contract just

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

by virtue of their officer roles," defendant officers of small company were reckless in not knowing about significant contracts).

Although Plaintiff claims that Naeem Ghauri was similarly responsible for the day-to-day operations of NetSol and must have known about the scope of Ascent's release as President of Global Sales, there are no specific facts—unlike Najeeb Ghauri's statements in the October 24, 2013 press release—to support this inference. The cases cited by Plaintiff are distinguishable insofar as they include specific allegations regarding the defendants' access to relevant information. See, e.g., Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1234 (9th Cir. 2004) ("CEO Ellison said, 'I love getting involved in every detail of the business,' and . . . all three top executives said that they monitored portions of Oracle's global database."); In re Peoplesoft, Inc., Sec. Litig., No. C 99–00472 WHA, 2000 WL 1737936, at *3 (N.D. Cal. May 25, 2000) ("Senior management affirmatively touted its long-term 'high visibility' to see into the future and to make reliable forecasts based on the long lead time needed to design and to implement ERP installations. This same visibility can be presumed to have given them the ability to see the downturn before it was reported."); In re Daou Sys., Inc., 411 F.3d 1006, 1022 (9th Cir. 2005) (describing "specific allegations of direct involvement in the production of false accounting statements and reports").

Defendants argue that their trading history—which suggests that they did not gain by making the challenged statements—negates any inference of scienter. See In re Downey Sec. Litig., No. CV 08–3261–JFW (RZx), 2009 WL 736802, at *14 (C.D. Cal. Mar. 18, 2009) ("A strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal.") However, "the lack of stock sales by a defendant is not dispositive as to scienter," as company officials may indirectly benefit from manipulating stock prices. No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 944 (9th Cir. 2003). In its earlier order, the Court noted its reluctance to assign significant weight to Defendants' trading history when, for example, other family members involved in the business might have traded on Defendants' behalf. Defendants now argue that beyond merely making no stock sales during the class period, they actually increased their stock ownership between June 30, 2010 and June 30, 2013. While this argument might be persuasive if it accounted for the entire class period,[1] Defendants conspicuously fail to make any argument based on Defendants' holdings in or around October 2013, when the statements regarding Ascent's release were issued.

Accordingly, Plaintiff has adequately alleged scienter against Najeeb Ghauri, but not against Naeem Ghauri.

    **B.**    **Section 20(a)**

---

[1] See, e.g., Zack v. Allied Waste Indus., Inc., No. CIV04-1640 PHX MHM, 2005 WL 3501414, at *14 (D. Ariz. Dec. 15, 2005) ("[I]ndividual defendants increased their stock holdings during the class period, which gives rise to an inference of good faith conduct, instead of the requisite scienter.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5787 PA (SHx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | In Re NetSol Technologies, Inc. Securities Litigation | | |

To state a claim under Section 20(b), a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised power or control over the primary violator. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000). For the reasons discussed above, Plaintiff has stated a claim for a primary violation of the securities law. Defendants argue that "Plaintiff's control person allegations are purely boilerplate with no attempt to plead facts about each Individual Defendant's actual roles and activities." (Motion at 20.) "The fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a 'controlling person' . . . . Rather, indicia of 'control' include whether the person managed the company on a day-to-day basis and was involved in the formulation of financial statements . . . . Moreover, actual authority over the preparation and presentation to the public of financial statements is sufficient to demonstrate control." S.E.C. v. Todd, 642 F.3d 1207, 1223 (9th Cir. 2011) (internal citations omitted).

Here, Plaintiff has adequately alleged Najeeb Ghauri's status as a control person. He was, for the reasons discussed above, a primary violator. Even otherwise, he was NetSol's CEO, was allegedly involved in day-to-day operations, and was quoted in the "global release" press release. Id. at 1223-24 (denying summary judgment for defendant CEO who, among other things, had day-to-day control of company, signed letter confirming 10-Q report, and "assisted in preparing the press release that reported the results from the third quarter"). Defendants are correct, however, in characterizing the control person allegations against Naeem Ghauri as boilerplate. Aside from his title, there is no indication that he had any involvement in or authority to control the statements regarding Ascent's release.

Accordingly, Plaintiff has stated a claim for violation of Section 20(a) against Najeeb Ghauri, but not against Naeem Ghauri.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part: Plaintiff's claims against Naeem Ghauri are dismissed with leave to amend. The Motion is otherwise denied. The Second Amended Consolidated Complaint may only be amended as to Naeem Ghauri and shall be filed no later than July 7, 2015. If a Second Amended Consolidated Complaint is not filed, Defendants answer shall be filed no later than July 21, 2015 or within 14 days of receiving Plaintiff's notice that it does not intend to amend the consolidated complaint.

IT IS SO ORDERED.